UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CHRIS UPTON *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil No. 3:12-CV-295 |
| | ) Judge Collier |
| BNFL, INC. *et al.*, | ) |
| | ) |
| Defendants. | ) |

# **M E M O R A N D U M**

Before the Court is a motion for summary judgment filed by Defendant BNFL, Inc. ("BNFL") (Court File No. 56). Plaintiffs Leslie Darnell Jones, Jeffrey Lynn Keylon, James David Parten, Timothy Edwards Robbins, and Paul David Vance (collectively "Plaintiffs")[1] responded (Court File No. 62) and BNFL replied (Court File No. 63). The Court heard argument on the motion on Wednesday June 3, 2015. For the following reasons, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 56).

### I. BACKGROUND

#### A. Factual Background

Plaintiffs are five former subcontractors of Defendant R&R Electric who claim they were exposed to hazardous materials including asbestos during their work on R&R Electric's worksite ("R&R Worksite") at the Department of Energy's ("DOE") Oak Ridge Reservation. In 1997 BNFL entered into a contract with the DOE to decontaminate, decommission, and recycle three uranium processing buildings. As part of this demolition, BNFL was required to remove eight

---

[1] Plaintiff Upton was dismissed for failure to prosecute (Court File No. 60).

synchronous condensers. These condensers had been built in the 1950s and were used to control the flow of electricity around the facility.[2]

As part of the demolition process, BNFL entered into sales agreements with companies seeking to buy and repurpose this electrical equipment. One of these companies was American Technologies Inc. ("ATI"), whose local project manager was David Miller. As part of their relationship, the parties executed an agreement known for the purposes of this litigation as the "Electrical Enterprise Agreement." ATI had its own arrangement with another company called R&R Electric to help recycle and resell some of this equipment. R&R performed its work on its own worksite apart from the BNFL worksite. BNFL had no contractual relationship with R&R.

The agreement between BNFL and ATI was memorialized in a series of letters. In the Purchase Order, the parties agreed that "any hazardous materials (asbestos, PCB, etc) discovered in the disassembly would be returned to BNFL." (Court File No. 56-1). ATI acknowledged that BNFL was selling the equipment "as is" and that BNFL made no warranties as to the conditions of the components. ATI agreed that it would "exercise reasonable and prudent oversight of its subcontractors, vendors, and others dispositioning electrical enterprise materials on behalf of ATI." (*Id.*)

In February 2000, BNFL and ATI entered into the Enhanced Work Plan ("EWP") to define the process for removing the condensers from the switchyard. The EWP detailed the procedures for removing the shell and the components, placing them on railcars to be moved to R&R's worksite. It included specific safety precautions related to specific hazards. One of these

---

[2] A synchronous condenser consists of two components, an exciter and a main condenser, that are encased together within a protective outer shell. Condensers can be constructed in an array of sizes, but the condensers on the DOE site were very large, weighing in excess of 200 tons of metals, wiring, and insulating materials.

hazards was the presence of asbestos. The EWP set out the following procedure if asbestos was found:

> Stop work on that condenser. Personnel who contacted potential ACM will not leave work area until checked by abatement subcontractor. Notify the supervisor or foreman who will arrange for Performance Abatement [BNFL's abatement contractor] to remove the hazard.

(Court File No. 56-1, p. 54). Before work began on the removal of the condensers, another one of BNFL's subcontractors, Coy, who was working on an analogous set of condensers, alerted BNFL to the presence of asbestos in the Condenser exciters. BNFL stopped all work related to the condenser removal, abated the hazard, and then notified ATI that it could resume work. David Miller of ATI admitted that he knew about all the steps in this process (Court File No. 56-1, p. 96, Miller Dep. 101–02). Gerald Reese, the now-deceased president of R&R also testified that he was concerned that the presence of asbestos in one place in the condenser might mean presence throughout (Court File No. 56-1, p. 103, Reese Dep. 114–15). ATI successfully removed and transported the condensers to R&Rs worksite.

R&R workers, including Plaintiffs, worked to disassemble the condensers over the course of the summer of 2000. Workers did not work pursuant to any general safety plan, were largely unsupervised, and none of the Plaintiffs wore respirators or protective clothing during the disassembly. In August, Coy notified BNFL that it had discovered asbestos in another condenser component. BNFL relayed that information to ATI and R&R who relayed that information to Plaintiffs. One of the Plaintiffs filed an employee concern with the DOE based on possible employee exposure to asbestos. But the DOE determined that because the work was neither performed at a DOE worksite nor was it performed pursuant to a DOE contract, the work was the responsibility of the contractor.

3

B.   **Procedural Background**

In November 2001 R&R sued BNFL in state court in an action that was later removed to this Court. Coy also sued BNFL directly in this Court. R&R alleged that BNFL had made negligent misrepresentations regarding the presence of asbestos in the condensers through the statements in the EWP as well as alleged verbal statements made by BNFL's project manager to Reese. In March 2004, Judge Phillips granted summary judgment in favor of BNFL finding that any alleged reliance on misrepresentations was not reasonable (Court File No. 56-1, Ex. H). He reasoned that, because the EWP was negotiated and drafted before any party was aware of asbestos and all of the parties subsequently became aware that the condensers contained asbestos, it was unreasonable to assume that the EWP constituted a guarantee that the condensers would not contain asbestos. Judge Phillips also looked to the relevant expertise of the parties and held that it would be unreasonable for Reese, who had 20 years of experience in the industry, to rely on such an alleged misrepresentation. The Coy lawsuit also resulted in a favorable determination for BNFL with all but two claims being dismissed before trial. The Sixth Circuit reversed on one point, but in a way that was favorable to BNFL. *See Coy/Superior Team v. BNFL, Inc.*, 174 F. App'x 901, 903 (6th Cir. 2006).

Plaintiffs brought suit in 2003 against the United States, the DOE, BNFL, ATI, and R&R. Because these claims were related to asbestos exposure at a facility under DOE oversight they were transferred to an MDL in the Eastern District of Pennsylvania. The United States and the DOE were dismissed from the case pursuant to an agreement with the Plaintiffs in 2005. The case sat dormant until 2009, when the MDL Court severed this action. The action was remanded to the Eastern District of Tennessee in 2011. Judge Phillips dismissed the action without prejudice in 2011. He determined that, because the United States was no longer a party, he no

longer had subject matter jurisdiction over the case.

Plaintiffs refiled the case in state court in 2012 and Defendants removed based on diversity jurisdiction.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

5

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. ANALYSIS

Plaintiffs assert eleven claims for relief. Where possible, the Court will treat multiple causes of action together. For example, there are several places in which multiple causes of action are defeated by one undisputed fact.

#### A. No Justifiable Reliance

Plaintiff asserts claims for fraudulent misrepresentation and negligent misrepresentation in its Seventh and Eighth causes of action respectively. Both of these causes of action require as an element that the Plaintiff justifiably relied on a misrepresentation made by the Defendant. *See Black v. Black*, 166 S.W.3d 699, 705 (Tenn. 2005) (setting forth the elements for common law fraud); *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991) (setting forth the elements of negligent misrepresentation). Defendant argues that the undisputed facts show that any reliance by Plaintiffs was not justifiable.

Plaintiffs allege that BNFL made misrepresentations both in the EWP and orally through its employees, specifically Eric Bolling, a materials supervisor with BNFL.[3] Plaintiff Tim

---

[3] Defendant argues that these statements should not be considered by the Court because they are hearsay. Because Robbins was an employee of BNFL however, these statements would

Robbins claimed that Bolling "repeatedly stated nothing could leave the BNFL site unless the materials were completely decontaminated and we [Plaintiffs] could not have them if materials were not free from contamination." (Court File No. 62-2, Robbins Aff. ¶ 5).[4] The EWP and the work orders contained similar language that materials were not to leave BNFL's worksite unless the materials were free from hazardous materials.

Under Tennessee law, to determine whether a plaintiff's reliance was reasonable, "several factors must be considered, including 'the plaintiff's business expertise and sophistication', 'the availability of the relevant information' and 'the opportunity to discover the fraud.'" *Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 122 (Tenn. Ct. App. 2001) (quoting *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996.)). Here, all of the factors support a finding that reliance was not reasonable. First, Plaintiffs were contractors in the electrical equipment industry in 2000 working on dismantling an old site at which asbestos had already been found in other components. As evidenced by deposition testimony, it was well known in the industry that some of these components might contain asbestos (*see, e.g.*, Court File No. 56-1, p. 103, Reese Dep. 114–15). The undisputed facts show that, after most of the alleged representations had been made, BNFL discovered information showing that there was disturbed asbestos in a component of the exciters and disclosed the presence of the asbestos to Plaintiffs' supervisor, Gerald Reese. At that point,

---

fall under the exclusion from the definition of hearsay in Fed. R. Evid. 801(d)(2)(D). Defendant also argues that the Court should not consider the statement because Plaintiffs did not disclose the witness on their initial disclosures. Because the Court concludes that it would not be reasonable to rely on these statements, the Court need not address this argument, although the Court would note that this witness was disclosed quite late in the game.

[4] At the hearing on the motion for summary judgment, Plaintiffs' counsel essentially conceded that only one of the Plaintiffs, Robbins, could claim reliance on this statement, as he is he only Plaintiff mentioned in the affidavit as having heard the statement.

Plaintiffs should have been aware that any EWP statements or verbal statements to the effect that any contaminated material should not leave the BNFL site were unreliable to the extent that Plaintiffs took them as guarantees that the material would be free from asbestos contamination.[5] The Court thus concludes on the basis of the undisputed facts that any reliance by Plaintiffs on the EWP statements or any alleged statements of Eric Bolling was not reasonable. The Court will **GRANT** Defendant's motion for summary judgment as to Plaintiffs fraudulent misrepresentation and negligent misrepresentation claims.

### B. No Duty to Plaintiffs

BNFL argues that BNFL did not have a duty to Plaintiffs and thus cannot be liable for failure to warn, negligence, or negligent infliction of emotional distress, all of which require a showing of some duty. *See Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986) (holding that failure to war requires a duty to disclose); *Marla H. v. Knox Cnty.*, 361 S.W.3d 518, 529 (Tenn. Ct. App. 2011) (noting that one of the elements of negligence is duty); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012) (noting that a claim for negligent infliction of emotional distress requires a showing of duty).

BNFL did not hire the Plaintiffs; they did not work on BNFL's worksite; BNFL exercised no control over these Plaintiffs. And under Tennessee law, even if the Plaintiffs had worked on BNFL's site, a landowner does not have a duty to a contractor's employees where the landowner has delegated all control over the day to day work to the contractor. *Rainer v. Westinghouse Elec. Corp.*, No. 94-5642 1995 WL 510050 at *2 (6th Cir. Aug. 28, 1995); *see also Ellis v. Chase Commc'ns, Inc.*, 63 F.3d 473, 476 (6th Cir. 1995) (holding that under Tennessee law,

---

[5] Though in no way dispositive, Judge Phillips also came to this conclusion in the related suit between R&R and BNFL. See (Court File No. 56-1, Ex. H).

8

"[a]bsent evidence of actual control, the owner of the property or the general contractor owes no duty of care to the employees of an independent contractor).

Plaintiffs maintain that Defendants have a duty to the general public arising from their contract with the Department of Energy. Pursuant to that contract, BNFL assumed responsibility for recycling activities as between these parties (Court File No. 62-1, p. 29). They argue that this general duty to the public is supported by deposition testimony from BNFL's subcontracts manager, Larry Brede who answered affirmatively when asked "Was BNFL under directive, . . . from the Department of Energy to protect the general public from toxic materials such as asbestos?" Court File No. 62-3, Brede Dep. 17). BNFL argues that to the extent that it did have a duty, it shifted that duty to ATI by contract. The Sixth Circuit has recently held that parties may transfer from a seller to a purchaser any and all such liabilities including liability for personal injury to workers and environmental liabilities. In fact, BNFL prevailed on this very issue in the related lawsuit filed by Coy. *See Coy/Superior Team v. BNFL, Inc.*, 174 Fed. App'x 901, 908 (6th Cir. 2006) (determining that liability for environmental liability could be shifted according to both CERCLA and Tennessee law). In this same case, the Circuit noted that an "as is" clause is sufficient to transfer such liability. *Id*. The Court concludes that Plaintiffs have not put forth facts from which a jury could conclude that Defendants owed any duty to these Plaintiffs. The Court will thus **GRANT** BNFL's motion for summary judgment as to Plaintiffs claims for failure to warn, negligence, and negligent infliction of emotional distress claims.

### C.    No Control of Plaintiffs

Plaintiff also asserts claims for negligence per se and strict liability based on an abnormally dangerous activity. Plaintiff's negligence per se claims are based on alleged violations of OSHA regulations and National Emissions Standards for Hazardous Air Pollutants.

9

Compl. At ¶¶ 93–98.[6] But Plaintiff has not explained why BNFL has a responsibility to ensure that ATI and R&R complied with these statutes when the work was being performed by Plaintiffs who were not employees of BNFL on property that was not under BNFL's control.

In *Ellis v. Chase Commc'ns, Inc.*, 63 F.3d 473, 477 (6th Cir. 1995) the United States Court of Appeals for the Sixth Circuit set forth the analysis for when a failure to comply with OSHA can constitute negligence *per se* under Tennessee law. The Sixth Circuit, construing prior circuit precedent noted that OSHA's 'general duty' clause, 29 U.S.C. § 654(a)(1), imposes a duty upon employers to protect the safety of its own employees." *Ellis*, 63 F.3d at 477. Under the specific duty clause, 29 U.S.C. § 654(a)(2),

> the class of employers who owe a duty under the specific duty clause is defined with reference to control of the workplace and opportunity to comply with OSHA regulations, and the employer's responsibilities depend upon which provision the employer is accused of breaching.

*Id*. It is undisputed that the injuries occurred as a result of work performed by the Plaintiffs when they were not on BNFL's work site. Evidence presented by BNFL clearly demonstrates that independent contractors working under R&R and ATI's contract would be the responsibility of ATI (See Court File No. 56-1, Ex. A-2, p. 47 ("ATI will exercise reasonable and prudent oversight of its subcontractors . . . dispositioning electrical enterprise equipment on behalf of ATI"). The only fact that Plaintiff argues demonstrates BNFL's control is that it claims that BNFL issued a stop work order when it received information regarding the presence of asbestos after the condensers were moved to R&Rs worksite (Court File No. 62-2, Robbins Aff. ¶10).

---

[6] Plaintiffs also allege that BNFL is liable as an arranger under CERCLA, but as BNFL points out, an arranger is one who arranges for disposal of a hazardous substance. *See Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1318 (11th Cir. 1990). BNFL did not arrange for disposal, rather it sold the condenser "as is" for a useful purpose.

BNFL argues that the stop work order was issued while the materials were still on the BNFL work site, and thus this has no bearing on whether BNFL had control over Plaintiffs (Court File No. 62-3, Brede Dep. 21). But even if it did, this single fact would be woefully insufficient to establish that BNFL should be liable for the failure to operate according to OSHA regulations. Based on the undisputed facts, BNFL asserted no supervisory authority over how Plaintiffs conducted their work; they did not make any employment decisions related to Plaintiffs; and they did not exercise any authority over the job site where the work was conducted.

This same reasoning applies with similar force to Plaintiffs NESHAPS based negligence per se claims and strict liability/abnormally dangerous activity claims. BNFL cannot be held liable for NESHAPS violations it had no control over. And it cannot be held liable for ultra-hazardous activity it did not conduct. The undisputed facts show Plaintiffs were injured as a result of ultrahazardous activity conducted by ATI and R&R not BNFL. For these reasons, the Court will **GRANT** BNFL's motion for summary judgment as to Plaintiffs' claims based on negligence per se and strict liability based on abnormally dangerous activity.

### D.     Strict Products Liability

Plaintiffs assert claims against Defendant based on strict products liability as either a manufacturer or a seller. Under Tennessee law, a manufacturer is defined as the "designer, fabricator, producer, compounder, processor or assembler of any product or its component parts." Tenn. Code Ann. § 29-28-102(4). A seller is defined as "a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption." Tenn. Code Ann. § 29-28-102(7). BNFL argues that it was neither a seller nor a manufacturer and the Court agrees. Based on the undisputed facts, BNFL was not in the business of selling synchronous conductors, rather it was

11

in the business of industrial decontamination. Thus while it did sell the condensers to ATI, it is not a "seller" for purposes of the products liability statute. It is also not a manufacturer. BNFL did not process or assemble the synchronous condenser in the meaning of the statute. BNFL did nothing more than disconnect and remove the synchronous condensers from the worksite. Such activity does not make BNFL a "manufacturer" under any reasonable construction of the word. The Court will **GRANT** Defendant's motion for summary judgment as to Plaintiff's products liability

### E. Outrageous Conduct

To prevail on a claim of outrageous conduct, Plaintiffs must show "that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). BNFL argues that Plaintiffs have not shown intentional or reckless conduct. The Court notes that Plaintiffs have also not shown any conduct "so outrageous that it is not tolerated in civilized society." *Id*. The Court will **GRANT** summary judgment on this claim based on the fact that Plaintiffs have not pointed to any evidence that would support a finding that BNFL's conduct was intentional or outrageous.

### F. Battery

To prevail on a claim for battery, the Plaintiffs must show that BNFL intended to cause harmful contact to Plaintiffs. *See Kite v. Hamblen*, 241 S.W.2d 601, 603 (Tenn. 1951) ("An indispensable element of the evidence necessary to support [a battery] is that the striking is willful and intentional."). Plaintiffs have put forth no evidence tending to show that BNFL intended harmful contact and have conceded that this claim should be dismissed. The Court will **GRANT** summary judgment on this claim.

12

G.  Civil Conspiracy

"An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). Plaintiffs agree that they have failed to support this allegation with proof and that summary judgment is proper. The Court will **GRANT** summary judgment on this claim.

IV.  **CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendants' motions for summary judgment (Court File No. 56).

**An order shall enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**